UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

APOLLO CAPITAL CORP.,

                     Plaintiff,

  -against-

ASTRA VEDA CORPORATION,

                     Defendant.

23-cv-9708 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

## BACKGROUND

Plaintiff Apollo Capital once held several of Defendant Astra Veda's convertible promissory notes. Dkt. 59 ¶ 5. For a few years, Apollo "submitted conversions under the Notes" (Apollo doesn't specify when, how many, or for what amount). Dkt. 51 ¶ 2. Later, Astra faced financial distress, and the parties renegotiated the notes. *Id.* ¶ 3. They eventually executed an agreement restructuring the notes ("the Restructuring Agreement"). *Id.* ¶ 6. Under the Restructuring Agreement, "Astra acknowledged and confirmed its debt to Apollo Capital … in an amount exceeding $400,000," and Apollo "agreed to reduce the debt to an aggregate Payoff in the amount of $360,000." *Id.* ¶ 7. The Restructuring Agreement also included a release and an indemnification provision. Dkt. 40-1 §§ 6–7.

A few years after the Restructuring Agreement was signed, Astra sued Apollo for some of the note conversions. Dkt. 51 ¶¶ 11–12. In that case, Astra alleged that Apollo had violated the Racketeer Influenced and Corrupt Organizations Act (RICO). *Astra Veda Corp. v. Apollo Cap. Corp.*, 2023 WL 5020347, at *2 (S.D.N.Y. June 7, 2023), *report and recommendation adopted in part, rejected in part*, 2023 WL 4702094 (S.D.N.Y. July 24, 2023). The theory seemed to be that the notes were criminally usurious, so Apollo violated RICO by being in the business of collecting unlawful debts. *Id.* The claim was dismissed because the complaint alleged that Apollo was a RICO "enterprise," but RICO doesn't impose liability on the enterprise itself. *Id.* (The district court adopted this part of the report and recommendation. *Astra Veda*, 2023 WL 4702094, at *6.) The court didn't decide whether the Restructuring Agreement was valid. *See Astra Veda*, 2023 WL 5020347, at *2–3, *5.

Now, the shoe is on the other foot. In this case, Apollo has sued Astra, seeking indemnification for its costs in defending the prior suit. *See* Compl. ¶¶ 40–49, Dkt. 8. Apollo claims that it cost more than $200,000 to defend a case in which the claim against it was disposed of in half a paragraph. *Id.* ¶ 49(f); *Astra Veda*, 2023 WL 5020347, at *2. (There were other defendants in the prior suit, at least one of which is also an indemnified party under the Restructuring Agreement. And the legal bills attached to this motion seem to be for all the prior defendants. *See* Dkt. 40-6. But

only Apollo Capital is a plaintiff here. Neither side has addressed how much of the total costs could be recovered by Apollo Capital alone.)

The parties have cross-moved for summary judgment. Dkts. 39, 54. For background, Astra filed a motion to compel discovery a few months ago, and the Court held a hearing on the motion. Dkt. 37. At that hearing, both sides insisted that summary judgment would resolve the case and requested permission to file motions before the close of discovery. The Court granted the request (but neither side filed a discovery-extension request, so discovery is now closed, *see* Dkt. 19). Despite the parties' insistence, the Court found the summary-judgment papers unhelpful. Apollo says the prior suit is squarely covered by the indemnification provision. Astra says the whole Restructuring Agreement, which contains the indemnification provision, is void as usurious or tainted by usury. Because questions of fact remain, the motions are almost entirely denied.

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could find for either side. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" if it could "affect the outcome." *Id.* The Court views the record "in the light most favorable to the non-movant." *Williams v. MTA Bus Co.*, 44 F.4th 115, 126 (2d Cir. 2022) (cleaned up). But if the non-movant will bear the burden of proof on an issue at trial, it must point to some evidence supporting the "essential element[s]" of its position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Astra says the Court should apply a heightened standard because these motions were filed before discovery closed. But as noted, the parties were the ones who insisted on this motion schedule, and discovery has now closed. In any event, the motions fail under the typical standard, so there is no need to consider whether a more demanding standard should apply.

## DISCUSSION

Along with some side issues, the Court addresses two basic questions in this opinion. First, does the indemnification provision cover the underlying suit at all? If it doesn't, the Court need not decide whether the provision is enforceable. Because the Court decides that the provision doesn't unambiguously favor Astra, the Court turns to the second question: Is the provision enforceable? That question breaks down into a few subsidiary ones. The key ones are whether the underlying notes are usurious and whether that usuriousness taints the Restructuring Agreement. On both of those questions, the Court finds genuinely disputed questions of fact.

### I. Interpreting the indemnification provision

The first question is whether the indemnification provision applies to the prior suit. Here is the relevant part of that provision:

> [Astra] agrees to indemnify and hold harmless [Apollo] … from and against all losses, claims, damages and liabilities … which are related to or result from the

> performance by the Secured Party of any of its obligations to the Debtor contemplated by this Agreement or any of the transactions contemplated hereby or the Notes or any other agreement related thereto, and will promptly reimburse any Indemnified Party for all reasonable expenses (including reasonable counsel fees and expenses) as they are incurred in connection with the investigation of, preparation for or defense arising from any threatened or pending claim, whether or not [Apollo] is a party and whether or not such claim, action or proceeding is initiated or brought by [Astra].

Dkt. 40-1 § 7.

There is a grammatical ambiguity here. The provision applies to all claims that "are related to or result from the performance by the Secured Party of any of its obligations to the Debtor contemplated by this Agreement or any of the transactions contemplated hereby or the Notes or any other agreement related thereto." It's unclear where the distributive phrase ends and the list begins. Put differently, the provision could be read as applying to all claims that:

   a. "are related to or result from [1] the performance by the Secured Party of any of its obligations to the Debtor contemplated by this Agreement or [2] any of the transactions contemplated hereby or [3] the Notes or [4] any other agreement related thereto," or

   b. "are related to or result from the performance by the Secured Party of any of its obligations to the Debtor contemplated by [1] this Agreement or [2] any of the transactions contemplated hereby or [3] the Notes or [4] any other agreement related thereto."

Neither party raised this issue in their summary-judgment briefs, but the Court asked for supplemental letters on the question. Dkt. 64. Both say the provision unambiguously favors its side. *See* Dkts. 67–68. Apollo at least makes some arguments for reading (a): that the release and indemnification provisions are generally broad, that reading (b) would render "the Notes" superfluous (or nearly so) because Apollo doesn't have obligations to Astra under the notes, and a few others. Dkt. 68.

Astra just asserts that reading (b) is superior based on "simple grammatical rules." Dkt. 67 at 5. It hasn't identified those rules or explained how they apply. Astra also recites basic principles of contract interpretation without applying them to the clause. *Id.* at 2–4. Separately, Astra says the provision should be construed not to apply to disputes between the parties (as opposed to third-party claims). *Id.* at 7 (citing cases). This argument leaves the Court dumbstruck. The provision expressly covers any claim, "*whether or not such claim, action or proceeding is initiated or brought by [Astra].*" Dkt. 40 § 7 (emphasis added).

Because the provision does not unambiguously exclude the prior suit, the Court can't grant summary judgment for Astra on that ground. And because Apollo's motion fails for the reasons below, the Court need not decide whether the provision unambiguously covers the prior suit.

3

## II. The usury defense

Astra's main argument is that even if the indemnification provision applies, it's unenforceable. Astra says the underlying notes are usurious and infect the Restructuring Agreement. The Court takes those questions in turn after addressing a few preliminary issues.

### A. Threshold questions

First, Apollo says Astra can't "make offensive use" of the criminal usury defense. Dkt. 41 at 12 (capitalization omitted). The Court struggles to see what this means. The one case Apollo cites holds that the criminal-usury defense can't be used "to effect recovery" (in other words, to sue to recover payments made on a usurious loan), but Astra isn't doing that here. *Intima-Eighteen, Inc. v. A.H. Schreiber Co.*, 568 N.Y.S.2d 802, 804 (1st Dep't 1991). New York law permits corporations to raise criminal usury as simply "a defense"; it doesn't establish any clear restrictions. N.Y. Gen. Oblig. Law § 5-521(3). True, the defense is typically raised when the lender seeks to collect on the usurious loan itself. But "loans proven to violate the criminal usury statute are subject to the same consequence as any other usurious loans: complete invalidity of the loan instrument." *Adar Bays, LLC v. GeneSYS ID, Inc.*, 179 N.E.3d 612, 621 (N.Y. 2021); *Rockefeller v. Jeckel*, 557 N.Y.S.2d 648, 649–50 (3d Dep't 1990) (noting that an attorney-fee provision in a "renegotiated promissory note" was "now … in question" because the note was potentially usurious). Here, Astra is using the defense to defend against a breach-of-contract claim by seeking to invalidate the whole contract. Apollo hasn't explained how this use is "offensive," so the Court won't grant summary judgment on this ground.

Second, Apollo invokes the Restructuring Agreement's savings and severability clauses. But these clauses can't salvage a usurious agreement. *See Am. E Grp. LLC v. Livewire Ergogenics Inc.*, 2020 WL 469312, at *8 (S.D.N.Y. Jan. 28, 2020) (noting that "usury-savings clauses … do not save an otherwise usurious note," and "severability clause[s] … [are] likewise ineffective to save the Agreement if its terms are usurious," and collecting cases (internal quotation marks omitted)), *aff'd*, 2022 WL 2236947 (2d Cir. June 22, 2022).

Third, Apollo says the Restructuring Agreement's release blocks any usury claim. But the release only covers then-existing claims. *See* Dkt. 40-1 § 6. Here, Astra says it has a defense invalidating the Restructuring Agreement itself, not any previous claim it purportedly released. And in any event, a usury claim or defense can be released or waived under only limited conditions, which neither party has addressed. *See* 47 C.J.S. Interest & Usury §§ 286, 300 (2024); *Hammelburger v. Foursome Inn Corp.*, 431 N.E.2d 278, 282 (N.Y. 1981); 72 N.Y. Jur. Interest & Usury §§ 152, 154 (2d ed. 2024).

Fourth, Apollo says Astra waived the invalidity argument. In the prior suit, Astra claimed that the notes and Restructuring Agreement were void while also trying to leverage their forum-selection clauses. *Astra Veda*, 2023 WL 5020347, at *5. Apollo hasn't cited any authority suggesting that a party forfeits or waives an argument based on a position taken in another case, and they haven't mentioned estoppel. Nor did the opinion in the prior case pass on this question. It merely pointed out the contradiction and dismissed the case because it couldn't survive either way. *Id.*

4

B. **Whether the notes are usurious**

With those matters out of the way, the Court turns to whether the underlying notes are usurious. Astra bears the burden to show usury, and it has four elements: (1) a loan[1] that (2) requires the principal to be repaid and (3) charges interest greater than that allowed by statute, and (4) intent to violate the usury statutes. *See Adar Bays*, 179 N.E.3d at 623; N.Y. Jur. Interest & Usury § 54. Both elements 3 and 4 raise questions of fact that are disputed here.

Start with element 3, "interest." New York's "usury statutes define 'interest' to include all collateral exchanges of money or property." *Adar Bays*, 179 N.E.3d at 623. Here, the notes had an interest rate that, alone, would be legal. *See* Dkt. 48 at 9–11. But they also had fixed profits and conversion rights that, Astra says, made them usurious. *Id.* Conversion rights do count as interest. *Adar Bays*, 179 N.E.3d at 624. But valuing these rights is a complicated question of fact. "[T]he overall value of the conversion option [must be measured] at the time of the bargain" and "proven by reasonable methods." *Id.* at 624, 627. "[A]ppropriate valuation methods for convertible options [are left] to fact finders.… [T]he valuation of a contingent future payment must be tailored to the risks involved." *Id.* at 624.

Astra attempts to establish a certain valuation method on this motion, but it does little to justify its method. The cases it cites were on motions to dismiss, so they determined only that certain valuation methods were plausible. *See VNUE, Inc. v. LG Cap. Funding, LLC*, 2024 WL 1349228, at *4 (E.D.N.Y. Jan. 12, 2024) ("This Court could not dismiss VNUE's interest rate methodology as matter of law at this stage: fact-specific questions cannot be resolved on the pleadings." (internal quotation marks omitted)), *report and recommendation adopted*, 2024 WL 1348706 (E.D.N.Y. Mar. 30, 2024); *DarkPulse, Inc. v. EMA Fin., LLC*, 2023 WL 2307386, at *5 (S.D.N.Y. Mar. 1, 2023) (similar). And rather than measuring the "intrinsic value" of the conversion rights at the time of the bargain, Astra's method seems to assume that Apollo would always be able to exercise the rights to achieve a maximum payout. *Adar Bays*, 179 N.E.3d at 624. Astra has not shown that its method is so "tailored to the risks involved" that this fact-intensive question is beyond dispute.

For its part, Apollo says conversion rights weren't counted as interest at the time of the notes or Restructuring Agreement, and the new rule is a change in the law that can't invalidate a prior agreement. Not so. The New York Court of Appeals decision clarifying this rule didn't make new law. It just "construed a statute that has been in effect for many years." *GS Cap. Partners, LLC v. FTE Networks, Inc.*, 176 N.Y.S.3d 759, 762 (N.Y. Sup. Ct. 2022); *see also LG Cap. Funding, LLC v. ExeLED Holdings, Inc.*, 2022 WL 16751904, at *5 (S.D.N.Y. Nov. 7, 2022).

Now consider element 4, intent. "Usurious intent is an essential element of usury and where usury does not appear on the face of the note, usury is a question of fact." *Adar Bays*, 179 N.E.3d at 623 (internal quotation marks omitted). Astra merely asserts that intent is established within the

---

[1] Apollo argues that the Restructuring Agreement isn't a loan, but that's beside the point for this motion. As explained later, the question here is whether the underlying notes (which are undisputedly loans) tainted the Restructuring Agreement, not whether that agreement was independently usurious.

"four corners" of the notes. Dkt. 48 at 8. But "the mere fact that a … future conversion option may be exercised at a future usurious rate does not render the loan usurious on its face.… [U]surious intent in such situations is a question of fact, not a matter of law." *Adar Bays*, 179 N.E.3d at 624.

At bottom, "because a usurer usually seeks to conceal the usury, and to accomplish the purpose by indirect methods, questions of usurious intent and whether a transaction is a cover for usury are typically questions of fact." *Id.* at 625 (cleaned up). "The hypothetical possibility that a future exercise of a floating-price conversion option may result in a return exceeding [the legal rate] does not render a loan usurious on its face. Rather, the value of such an option is a question of fact, and the burden to prove that value is on the borrower." *Id.* at 621. Because Astra hasn't carried its burden beyond genuine dispute, its motion must be denied. But because the notes could be found to be usurious, the Court addresses whether that would matter for the Restructuring Agreement.

### C. Whether the Restructuring Agreement is tainted

Apollo says it doesn't matter whether the notes are usurious—they are separate from the Restructuring Agreement. Astra responds that the usury "transcend[s] into" the Restructuring Agreement. Dkt. 48 at 11. Astra doesn't do much to explain this argument, but Apollo doesn't do much to counter it either. Without much help from the parties, the Court understands New York law to hold as follows.

A usurious loan is "void *ab initio*," meaning it is void at its initiation. *See Adar Bays*, 179 N.E.3d at 616, 621. And a usurious loan can't be merely repackaged. "The taint of usury attaches to all consecutive obligations or securities growing out of the original usurious transaction, and none of the descendant obligations, however remote, is free from it if the descent can be traced." 72 N.Y. Jur. Interest & Usury § 147; *see also* 13 A.L.R. § 1213 (1921) (collecting New York cases); 47 C.J.S. Interest & Usury § 284; *Mabee v. Crozier*, 1880 WL 347581, at *1 (N.Y. App. Term. Sept. 1, 1880).

But the original agreement can be purged of usury.[2] "Abandonment of the usurious agreement and the execution of a new obligation for the amount of the actual debt, free from usury, and bearing only legal interest, … purge the original usury and make the second obligation valid and enforceable if the old obligation is actually given up and canceled." 72 N.Y. Jur. Interest & Usury § 147; *see also* 13 A.L.R. § 1213 (collecting New York cases); 47 C.J.S. Interest & Usury § 286; *Sheldon v. Haxtun*, 91 N.Y. 124, 132 (1883). Whether the usury has been purged is a fact-intensive inquiry:

> Just what is necessary to be done, touching an old and usurious contract, in order to place the parties to it in a position where they can feel assured that a contract is

---

[2] The Court recognizes that it's odd to think of "purging" a void agreement. That is, if the agreement was never made, there's nothing to cleanse. Despite the terminology, the law makes sense. As explained, rather than "purging" the original agreement, New York law really requires abandoning the original agreement and forming a new one.

6

> free from all usurious taint which has for its support a promise founded on the consideration of the original corrupt agreement, has not been fully outlined by the courts. But, in order to do away with the old agreement, both parties must act; and, in the absence of a specific declaration of their intention, the circumstances proven must be such as to warrant an inference of fact that the parties intended to do away with the old contract, and to put each other in precisely the same position as if the illegal feature of it never existed.

*Levey v. Allien*, 25 N.Y. Supp. 352, 355 (1st Dep't 1893); *see also Brackett v. Barney*, 28 N.Y. 333, 338 (1863) (opinion of Selden, J.) (requiring for abandonment that the "the actual facts of the transaction are so modified that the writing will truly represent a legal and not an illegal contract").

Here, the parties have barely addressed this question. To the extent that they have, there is a genuine dispute. On its face, the Restructuring Agreement simply seems to modify the terms of the original notes, not cancel them. And Astra points to several provisions of the Restructuring Agreement that, it says, "incorporate" the notes. Dkt. 59 ¶¶ 49–55. Apollo insists that "the Notes were retired per the [Restructuring] Agreement." *Id.* ¶¶ 50–54. And it points to Astra's public filings that post-date the Restructuring Agreement, in which Astra said it had no outstanding convertible notes. Dkt. 56 at 2 n.2.

Apollo and Astra also dispute the meaning and importance of the Restructuring Agreement's default provision. It says that "[u]pon Default … [Apollo] will no longer be required to refrain from conversions of the notes." Dkt. 40-1 § 5(e). Astra says this provision clearly imports the usurious conversion rights into the Restructuring Agreement, and one case suggests that result. *Adar Bays, LLC v. 5Barz Int'l, Inc.*, 2018 WL 3962831, at *7 (S.D.N.Y. Aug. 16, 2018). Apollo counters that the "majority view" is that "default interest rates should not be considered in an analysis of criminal usury." *LG Cap. Funding, LLC v. PositiveID Corp.*, 2019 WL 3437973, at *11 (E.D.N.Y. July 29, 2019), *report and recommendation adopted*, 2019 WL 4564882 (E.D.N.Y. Sept. 20, 2019). But whether the conversion rights in the Restructuring Agreement are usurious is, again, not the question here. It is just another piece of evidence that could show (or not) that the underlying notes have tainted the Restructuring Agreement.

Stepping back, this all goes to show that this case can't be resolved on the text of the Restructuring Agreement alone. Rather, that agreement must be construed as a whole, together with other circumstances. Given these disputes and the lack of factual detail in these motions, whether any usury tainted the Restructuring Agreement or was purged remains genuinely disputed.

## III.   Other issues

Astra raises several other arguments. Apollo fails to deal with them effectively, but they are such frivolous "gotchas" that they don't warrant summary judgment. *Cf. New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (noting that the Second Circuit has "expressed a strong preference for resolving disputes on the merits" (internal quotation marks omitted)).

First, Astra says Apollo failed to prove its legal fees from the prior action. But Apollo submitted its invoices, Dkt. 40-6, and its motion was focused on its substantive claims. Presumably, it

thought that the exact amount of damages would be proved later. Astra hasn't made an argument or cited authority for why this shortcoming should have any preclusive effect.

Second, Astra says Apollo has conceded that the Restructuring Agreement is invalid. That's because Apollo demanded a jury when the Restructuring Agreement says both parties "waive any right to a trial by jury in any action … to enforce or defend any rights … under this agreement or any related document." Dkt. 40-1 § 8(c). Astra cites no authority for the idea that this demand is any kind of concession or waiver. Astra could've tried to strike the jury demand, but it's not obvious why disregarding one provision of the Restructuring Agreement imperils the rest of it.

Third, Astra says Apollo conceded various facts and arguments by failing to respond properly. On the factual issues, Astra is right that Local Civil Rule 56.1 requires direct responses to each numbered paragraph in responsive Rule 56.1 statements. But the proper remedy for failure to comply with that requirement is within the Court's discretion. *See Mamyrova v. Neighborhood Ass'n for Inter-Cultural Affs., Inc.*, 2024 WL 622106, at *3 (S.D.N.Y. Feb. 14, 2024) (collecting authority). Here, all the Rule 56.1 statements were frequently argumentative, unsupported, and meandering, so the Court declines to penalize either side. As for conceding arguments in briefs, Astra has more of a point. But given that the briefs were both mystifying and making fact-laden arguments without factual support, the Court again declines to resolve the whole case on technicalities.

Fourth, Astra says Apollo's declaratory-judgment claim is duplicative of its breach-of-contract claim. Apollo doesn't respond. Despite the discussion above, this argument is straightforward, legal, and serves only to slightly narrow the case. So the Court holds the concession against Apollo. And the argument is right on the merits too. For the contract claims, Apollo alleges that "Astra materially breached … by failing to … reimburse Plaintiff for its counsel fees and expenses incurred in defending against the [prior] Lawsuit." Compl. ¶ 43. For the declaratory-judgment claim, Apollo alleges that "[t]here is a controversy concerning whether Defendant is obligated to indemnify Apollo Capital for its counsel fees and expenses incurred in defending Astra's lawsuit." ¶ 47. When outlining what it wants the declaratory judgment to say, it just lists the facts that would need to be found for a breach of contract. ¶ 49. So the claims are duplicative, and the Court grants summary judgment against the declaratory-judgment claim. *See Com. Tenant Servs., Inc. v. Penske Bus. Media, LLC*, 2022 WL 4292971, at *6 (S.D.N.Y. Sept. 16, 2022).

## IV.   Where do we go from here?

After denying both motions (except as to the declaratory-judgment claim), this case is an awkward spot. As noted, discovery has closed. Yet Astra seems to think that it'll be getting more discovery after this decision. *See* Dkt. 48 at 20–22. And though summary judgment is the time for each side to lay at least some of its evidentiary cards on the table, the Court still has little idea what each side is holding. The Court is reticent to send a case to a jury without knowing whether the jury will have the tools it needs.

Apollo, meanwhile, has threatened to "seek leave to amend the Complaint" if it "is not granted summary judgment." Dkt. 68 at 4 n.1. It says it will invoke the Restructuring Agreement's liquidated-damages provision to go after another $100,000. *Id.*; *see also* Dkt. 40-1 § 4. The Court is

not prejudging the motion, and Apollo is free to ask. But the amended-pleadings deadline was March 1, 2024. Dkt. 19. And "[w]here a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.' A finding of good cause depends on the diligence of the moving party." *Wenger S.A. v. Olivet Int'l Inc.*, 2024 WL 3342281 (S.D.N.Y. June 10, 2024) (quoting *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003)).

The parties should consider how much continued litigation over reimbursement for a prior litigation is really worth. On the parties' request, the Court can refer the case to a magistrate judge for settlement discussions, or the parties may even consent to proceed before a magistrate for the rest of the case. But if the parties choose to continue to litigate, the Court will of course see this case through to the end: *ad astra per aspera*.

## CONCLUSION

For these reasons, Defendant's motion for summary judgment as to the declaratory-judgment claim is GRANTED. The summary-judgment motions are otherwise DENIED. The Clerk of Court is directed to close Dkts. 39, 54, and 67.

By August 15, 2024, the parties shall meet, confer, and submit a joint letter proposing a schedule to complete this case.

SO ORDERED.

Dated: August 7, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge